**66**

Lambert L. BEERY, and Roto Lokit, Inc., Plaintiffs,

v.

REGAL MOTOR PRODUCTS, Inc., Defendant.

No. 11981.

United States District Court
E. D. Michigan, S. D.
Sept. 23, 1954.

E. J. Balluff, Detroit, Mich., for plaintiffs.

Daniel G. Cullen, Detroit, Mich., for defendant.

LEDERLE, Chief Judge.

1. In their complaint, plaintiffs, Lambert L. Beery and Roto Lokit, Inc., a Minnesota corporation, charged defendant Regal Motor Products, Inc., a Michigan corporation, with infringement of claims 1–5 of United States Letters Patent No. 2,538,552 for "Door Lock Repair Kit". The defendant has admitted the infringement charged and has based its defense solely on the ground that all five claims of the Beery patent are invalid for want of invention.

2. The plaintiff, Lambert L. Beery, is the lawful owner of the patent in question, which was legally issued on January 16, 1951. Plaintiff, Roto Lokit, Inc., is the exclusive licensee of the patent and has the exclusive right to make, use, and sell the invention covered by the patent.

3. Defendant Regal Motor Products, Inc., has manufactured and sold, within the jurisdiction of this court, devices substantially identical to the devices described and claimed in the Beery patent.

4. Prior to the Beery patent in suit, defendant and others manufactured and sold repair kits for rotary bolt type door locks of the kind used on automotive vehicles. With this old type of repair kit, which consisted of a new rotor, two rivets, and a backing plate, it was necessary partially to disassemble the door and the interior upholstery thereof, to remove the entire lock mechanism from the door, to grind off the ends of the two rivets of the original lock which support the rotary bolt and the dovetail of the latch mechanism, to replace the backing plate, the worn rotor, and the old rivets with the corresponding new parts, to secure the new backing plate and the other new parts in place by riveting the new rivets to the original assembly and to the backing plate, to reassemble the repaired lock in the door, and to replace the upholstery and other parts disassembled from the door.

5. It was also the practice prior to Beery to replace the entire lock mechanism when it became defective, but this practice also involved the partial disassembly of the door and the inner upholstery, the removal of the old lock, the assembly of the new lock to the door, and the replacement of the upholstery and other parts which needed to be removed from the door in order to permit the removal of the lock. The average charge for replacing or repairing a rotary lock according to either of the prior practices usually involved an expense of $10.00 or $15.00 to cover the new parts and the labor involved.

6. Beery's idea was to saw off the outer face of the original bracket and the outer end of the original shaft. This can easily be done without removing the lock from the door and with the use of an ordinary hacksaw. This simple operation permitted the easy removal of the worn rotor. Instead of replacing the worn parts with new parts of the same design, as was the prior practice, Beery invented a new bracket which includes

an integral hollow sleeve which functions as a shaft for the rotor. Beery patented this bracket per se in claim 5, and in combination with a new rotor and securing means in claims 1–4. Beery's bracket was designed to slip over the remaining outwardly projecting end of the original bracket and to be locked thereto. Beery's new rotor was provided with a larger diameter bore than the original rotor and is supported entirely by the sleeve of Beery's bracket rather than by the original shaft which tended to become loose with wear.

7. The repair kit provided by Beery is a great improvement over repair kits for rotary bolt latches which were available prior to Beery's invention. With Beery's repair kit, it is possible to replace the worn parts of defective locks in a very few minutes and at a cost of about $3.00, as compared with an average cost of $10.00 to $15.00 according to prior practice; and if the car owner does it himself, which he could readily do, the cost would be less than $2.00.

8. The invention disclosed does not belong to the class of inventions like the telephone and incandescent lamp, but does represent a distinct advance in the art. The application received the painstaking and careful consideration of the patent office. None of the prior art cited by the defendant is more relevant than that cited by the patent office.

9. Viewed in retrospect, the inventor's solution of the problem of designing a kit that could be used to repair automobile door locks easily, quickly and inexpensively may appear to be perfectly obvious. The fact remains, however, that many mechanics followed the time-consuming system of disassembling automobile doors, removing upholstery and laboriously replacing the worn part, until Beery produced his simple device. It immediately achieved a remarkable commercial success and was adopted by one of the major automobile companies as a standard repair part. The fact that none of the numerous mechanics engaged in repairing locks had designed the simple device is strong evidence that the pa-

tent disclosed a device which would not be obvious to a mechanic skilled in the art. It therefore required the exercise of the inventive faculty. The fact that its use was confined to such a comparatively small field is not evidence of its invalidity. The public has profited to the extent of millions of dollars through the contribution made by the inventor. Persons who wish to benefit by his contributions must be required to pay reasonable compensation for the use of the inventions covered by the claims.

### Conclusions of Law

1. The means Beery adopted to accomplish the desired result are simple, but certainly far from obvious. For a great many years prior to his discovery, there was need for an efficient repair kit. The fact that none of the numerous mechanics engaged in repairing locks had designed the simple device is strong evidence that the patent disclosed devices which would not be obvious to a mechanic skilled in the art. The public approval accorded the devices was due to the high quality of the particular combination disclosed. They have utility and they exemplify a distinct advance over the prior art. Claims 1–5 are valid.

2. The defendant having conceded infringement of all of the claims, it follows that the defendant, its agents, servants, employees and representatives be perpetually restrained from making, using or selling devices constructed in accordance with the teachings of the Beery patent and the claims of said patent; that the plaintiff recover from the defendant the profits, gains and advantages which the defendant has received from the infringement; that the defendant shall file with the court and serve upon counsel for the plaintiff, on or before December 1, 1954, an account, verified by its officer or officers having the most certain and full knowledge of the matter, showing the total number of accused devices made, sold, or used by the defendant up to the time of the filing of said account, in debit and credit form, disclosing all gains, profits, and advantages which the defendant has derived or re-

ceived or made from such making, using, or selling; that all books, papers, vouchers, and correspondence, and other documents relating to the matter by such accounting shall be kept intact by the defendant and shall remain in its possession; that, if the plaintiff has any objections to the account as filed, these objections shall be filed with this court and served upon defendant's counsel within thirty (30) days after the receipt of the accounting; and that the matter of costs shall be deferred until the final disposition of the accounting.

### Judgment

In accordance with the foregoing findings of fact and conclusions of law, It Is Hereby Ordered, Adjudged and Decreed as follows:

1. That claims 1–5 of United States Letters Patent No. 2,538,552 are valid and were infringed by defendant.

2. That a permanent injunction should be issued restraining further infringement, and, accordingly, defendant, its agents, servants, employees and representatives are hereby perpetually restrained and enjoined from making, using or selling devices such as the accused device, or any other device or devices which infringe said claims of said patent.

3. That the plaintiff recover from the defendant the profits, gains and advantages which it has received from the infringement.

4. That the defendant shall file with this court and serve upon counsel for the plaintiff, on or before December 1, 1954, an account, verified by its officer or officers having the most certain and full knowledge of the matter, showing the total number of devices made, sold, or used by defendant up to the time of filing said account, in debit and credit form, disclosing all gains, profits and advantages which defendant has received, derived, or made by reason of such making, using or selling.

5. That all books, papers, vouchers, correspondence, and other documents relating to the matter to be covered by such accounting shall be kept intact by the defendant and shall remain in its possession.

6. That, if the plaintiff has any objection to the account as filed, these objections shall be filed with this court and served upon defendant's counsel within thirty (30) days after receipt of the accounting.

7. That the matter of costs be deferred until the final disposition of the accounting.